UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHAWNTE BARRON,

                      Plaintiff,

                                     **Hon. Hugh B. Scott**

                                                        **18CV1304**

                       v.

                                                          **CONSENT**

ANDREW SAUL, COMMISSIONER,                 **Order**

                      Defendant.

      Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 7 (plaintiff), 10 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 5 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 14, Order of Oct. 4, 2019).

## PROCEDURAL BACKGROUND

      The plaintiff ("Shawnte Barron" or "plaintiff") filed an application for disability insurance benefits on May 4, 2015 [R. 15]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and

concluded, in a written decision dated January 5, 2018, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 18, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 19, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 7, 10), and plaintiff duly replied (Docket No. 13). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, 28 years old when she applied for benefits, has a high school diploma and past relevant work as a housekeeper and cleaner (light work but performed at medium exertion level) [R. 24, 19, 23]. This work was unskilled, so there was no transferability of job skills at issue here [R. 24]. She was not engaged in substantial gainful activity since May 2015, the application date [R. 17]. She worked part time as a cashier at Dollar General from September 2015 to April 2016 [R. 19-20, 46, 49-50]. She claims that she left due to frustration, but progress notes from Lakeshore Behavioral Health indicates that she left due to her pregnancy [R. 20, 562]. She also worked at Jim Bell Cleaners pressing clothes from February to end of May 2017 but was laid off from that job [R. 20, 50-51]. She also worked as a housekeeper at a motel for four months but stopped [R. 20, 51-52]. Plaintiff had not worked full time since 2015 due to what she termed a "mental thing with" her and her mood swings and becoming angry [R. 20, 55-56].

2

Plaintiff lives with her three of her six (later seven [R. 497]) children, ages 1, 4, and 12 years old as of the 2018 hearing [R. 19, 49, 59], caring for the three children by herself [R. 59]. She testified that she has a phobia against driving and says that she will never drive [R. 19, 48].

Plaintiff was raped by her father and had a long history of abuse by her father and later her boyfriend [R. 412, 18]. Her psychiatric history includes long term treatment and a suicide attempt at age 12 [R. 412]. She suffers from bipolar disorder, PTSD, and personality disorder [R. 437, 440, 501-02] (Docket No. 7, Pl. Memo. at 12). She has a history of attempted suicide at age 12 [R. 258] (id. at 5) with hospitalization [R. 258, 413] (id. at 12).

The ALJ found that plaintiff had the following claimed severe impairments: personality disorder, not otherwise specified (NOS), bipolar disorder, post-traumatic stress disorder ("PTSD") [R. 17]. Plaintiff also was diagnosed with obesity (plaintiff testified that she was 5'6" tall and weighed 274 [R. 48; see R. 276 (Lakeshore Behavioral weighed plaintiff at 276 pounds)], but the ALJ concluded that plaintiff did not allege any physical impairments and there was no evidence of the effects of her obesity on her functioning, thus finding that her obesity was a non-severe condition [R. 17]. Plaintiff, noting that she gained weight since applying for benefits, testified that she ate due to depression and had done so for years [R. 59].

**MEDICAL AND VOCATIONAL EVIDENCE**

Plaintiff claimed disabled due to severe depression, suicidal thoughts, PTSD, and "lock[ed herself] in house" [R. 20, 176, 437, 440, 501-02]. She also declared that she lashed out or snapped at people [R. 20, 176]. She was prescribed Abilify and Gabapentin [R. 488, 440, 501-02] (Docket No. 7, Pl. Memo. at 12).

Applying the standards for Listings 12.04 and 12.15, including "Paragraph B" criteria, the ALJ found that plaintiff had mild limitations in understanding, remembering, or applying information, and moderate limitations for the other criteria [R. 17-18]. Thus, the "Paragraph B" criteria were not met [R. 18]. Also, the "Paragraph C" criteria were not met [R. 18]. Dr. Thomas Veeder treated plaintiff on November 17, 2014, reported that plaintiff complained of feeling increased stress at home and at school [R. 20, 442]. On January 12, 2015, Dr. Veeder reported that plaintiff said things were going well, denying having any depressive symptoms or aggressive thoughts [R. 20, 439]. On February 20, 2015, Dr. Veeder examined plaintiff and she claimed being stressed [R. 21, 436]. The doctor noted that plaintiff was close to having her case closed due to noncompliance, but she missed appointments due to medical care for her children [R. 21, 436]. During the ALJ's hearing, plaintiff explained her treatment record; she stated that she felt that she could control the situation herself and tried to do things herself rather than ask for help [R. 56].

The record did not contain any opinions, the state agency psychologist concluding that there was insufficient evidence to render an opinion [R. 23, 86]. The psychologist stated that plaintiff failed to return ADL (activities of daily living) forms despite having an attorney involved in her case, leading to the finding of insufficient evidence [R. 86].

The ALJ found that plaintiff now had a residual functional capacity (or "RFC") to perform a full range of work at all exertional levels with non-exertional limitations, namely plaintiff is limited to simple, routine tasks or work that may include repetitive tasks. She cannot perform production rate or pace work, however. She can perform work allowing a person to be off task 5% of the workday, in addition to regularly scheduled breaks. She cannot work in a job

4

requiring driving a vehicle. She can work that does not require teamwork. She can perform work that requires the same tasks every day with little variation in location, hours, or tasks. [R. 19.]

The ALJ states that this RFC is supported by the evidence of record as a whole, from plaintiff's activities in completing her associate degree while caring for young children, plaintiff not consistently being compliant with treatment or medication, while plaintiff's mood and symptoms improved when she was compliant [R. 23].

Given this RFC, the ALJ posed hypotheticals to the vocational expert [R. 73-75, 24]. The expert opined that a hypothetical claimant with plaintiff's RFC, age, education, and skills could perform such occupations as sales attendant (light work), laborer-stores (medium work), or laundry laborer (medium) [R. 24]. The ALJ concluded that plaintiff was not disabled [R. 25].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.  General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically

5

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff contends that the ALJ failed to rely on a medical opinion or useful assessment of plaintiff's mental impairment, relying instead (without explanation) upon his lay opinion from the bare mental health findings to find the RFC (Docket No. 7, Pl. Memo. at 1, 11-16). She argues that the ALJ here merely summarized the mental

health records [R. 19-23, 18] and did not explain what evidence was relied upon to make the "highly specific finding or point to any evidence that was a useful assessment of Plaintiff's mental impairments" (id. at 13) or cite to a medical opinion in support of the RFC (id.). Plaintiff's mental condition was under ongoing psychotherapy, medication management, and placement in a PROS program, thus more serious than the ALJ believed (id. at 14). The ALJ also did not conduct a functional assessment (id. at 14). Instead, plaintiff argues that the ALJ rested on his lay opinion (id. at 15; see Docket No. 13, Pl. Reply Memo. at 1, 2) or the ALJ's assessment of the bare medical record without the assistance of medical opinions (Docket No. 13, Pl. Reply at 2), later arguing that defense counsel was applying his lay opinion in construing the mental health record (id. at 4).

Defendant counters that substantial evidence, including plaintiff's own testimony and medical evidence in the record, demonstrated that plaintiff was not disabled (Docket No. 10, Def. Memo. at 15-19) and that she could perform simple work without production pace (id. at 12-15). Defendant contends that Social Security regulations do not require the ALJ to adopt a specific medical assessment from any medical source (id. at 16).

Plaintiff also contends that the ALJ did not assess her credibility properly in considering plaintiff's non-compliance with treatment (Docket No. 7, Pl. Memo. at 1, 16-20, citing SSR 96-7p; see also Docket No. 10, Def. Memo. at 19). Defendant denies that the ALJ discredited or diminished plaintiff's subjective complaints (Docket No. 10, Def. Memo. at 19). This contention can be addressed first and briefly. The Commissioner issued SSR 16-3p, effective March 16, 2016, replacing an earlier Social Security Ruling (SSR 96-7p) that called for assessment of the credibility of a claimant's statement, see also Va. L. S. v. Comm'r of Soc.

Sec., No. 5:18CV937, 2020 U.S. Dist. LEXIS 17886, at *15 n.3 (N.D.N.Y. Feb. 3, 2020) (applying SSR 16-3p to ALJ decision rendered after March 2016). The new ruling, applicable to plaintiff's January 2018 ALJ decision, eliminated credibility from "the 'sub-regulatory policy' because the regulations themselves do not use that term. Instead, symptom evaluation tracks the language of the regulations," Natashia R. v. Berryhill, No. 3:17CV1266, 2019 U.S. Dist. LEXIS 44289, at *28 (N.D.N.Y. Mar. 19, 2019) (Wiley Dancks, Mag. J.), while the standard for evaluating subjective symptoms remains unchanged, id, at *28 n.7. SSR 16-3p calls upon ALJs to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms," SSR 16-3p, 2016 SSR LEXIS 4, at *2 (2016). Thus, plaintiff's objection to the weighing of her credibility is **rejected** as a ground for reversal.

As for the ALJ's consideration of medical opinions on plaintiff's mental health, plaintiff argues that the ALJ made findings without a medical opinion (Docket No. 7, at 14). The ALJ noted the absence of a medical opinion in this case [R. 23] with the agency psychologist finding that plaintiff did not supply enough evidence for an opinion to be rendered despite being represented in this application [R. 86] and the hearing [R. 15]. Plaintiff has the burden of showing disability through Step Four of the five-step analysis, see Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). By not completing these forms, plaintiff deprived herself of the opportunity to obtain a medical opinion on her mental health. Supplemental Security income regulations require the ALJ to consider medical opinions in the case record, 20 C.F.R. § 416.927(b); where evidence in that record (including medical opinions) is insufficient the ALJ "will determine the best way to resolve the inconsistency or insufficiency," id., § 416.920b(b)(2). While the ALJ would have been informed by having such an opinion, plaintiff bears the burden

9

of providing evidence for such an opinion to be derived. Plaintiff has been represented in this application (see [R. 183, 86]) and advised of the consequence in not responding [R. 183], hence the ALJ need not ensure that all relevant facts are developed that would be required for a self-represented claimant, see Cruz v. Sullivan, 912 F.2d 8, 11-12 (2d Cir. 1990) (quotation omitted); Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980); Gold v. Secretary of HEW, 463 F.2d 38, 43 (2d Cir. 1972). With plaintiff represented, this Court need not determine whether plaintiff's rights were adequately protected and would be required if she proceeded pro se, cf. Echevarria v. Secretary, HHS, 685 F.2d 751, 755 (2d Cir. 1982); Hankerson, supra, 636 F.2d at 895.

Plaintiff cites cases in which the ALJ erred in not crediting medical opinion evidence and instead relied upon lay opinion (Docket No. 13, Pl. Reply Memo. at 2), see also Kiggins v. Comm'r of Soc. Sec., No. 17CV6642, 2019 WL 1384590, at *5 (W.D.N.Y. Mar. 27, 2019) (Feldman, Mag. J.). Even if the ALJ should not make common sense judgments for mental health impairments, id., when plaintiff fails to produce evidence to allow formulation of a medical opinion the only recourse the ALJ has is reviewing the rest of the evidence in record or denying the claim for insufficient evidence. This creates an evidentiary gap in the record, see Stein v. Colvin, No. 15CV6753, 2016 WL 7334760, at *4 (W.D.N.Y. Dec. 19, 2016) (Geraci, C.J.) (rejection of sole medical opinion creates evidentiary gap), but the reason for this gap is plaintiff's failure to submit evidence. Plaintiff's motion (Docket No. 7) is **denied**.

What is left, then, is the medical record and plaintiff's testimony. Plaintiff has been in mental health treatment from April 2013 to March 2017 [R. 412-440, 487, 497-502, 605-25] (Docket No. 7, Pl. Memo. at 14). Plaintiff reported things were going well when she was on medication [R. 442-43, 605] or when she was off the medication for a month [R. 439] (Docket

No. 10, Def. Memo. at 12). She testified that she was better in taking her medication than in the past [R. 65]. Her complaints were that she was stressed [R. 442, 436] sometimes she feared she may harm her children [R. 442]. She missed treatment due to care for her children [R. 436] and was occasionally off medication during her pregnancy [R. 420]. At these appointments she denied depression symptoms [R. 445]. Despite a history of antisocial behaviors and impulsive acting out, a doctor at Lake Shore found plaintiff had outgrown but continued to have mood lability [R. 501]. Plaintiff later testified that that her difficulty at work was from mood swings and anger [R. 55-56] (id. at 13), with this mood swings and anger arising from her family life. She denied having problems with coworkers and supervisors, staying to herself [R. 66]. She stated that she no longer had outbursts of anger or depression [R. 69]. She also testified that she would seek help in the work environment when she might not in her personal life [R. 56-57]. She claims that she gained weight due to her depression [R. 59]. She stated she performed household chores and had some assistance from her eldest, twelve-year-old child [R. 59-60].

This record provides substantial evidence discounting plaintiff's mental health impairment and supports the ALJ's findings.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 7) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 10) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

_s/Hugh B. Scott_  
Hon. Hugh B. Scott  
United States Magistrate Judge

Buffalo, New York
March 18, 2020